UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAYMOND CLYDE,

                                         Plaintiff,

                                                                                                 <u>DECISION AND ORDER</u>

                                                                                                  09-CV-6319L

                        v.

TOM SCHOELLKOPF Hearing Officer,
DONALD SELSKY, Director of Special Housing,
M. MALDONADO, Correction Officer,

                                         Defendants.
_____

       Plaintiff, Raymond Clyde, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects in connection with certain incidents that occurred in 2006, while plaintiff was confined at Auburn, and later Attica, Correctional Facilities. Plaintiff has sued three individual defendants, each of whom was a DOCS employee at the time of the relevant events. Defendants have moved for summary judgment dismissing the claims against them, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted.

**BACKGROUND**

In July 2006, plaintiff was issued two misbehavior reports charging him with assaulting staff and other violations arising out of an alleged assault on a female DOCS employee. A Tier III hearing began on July 14, 2006, before Hearing Officer Thomas Schoellkopf. The hearing was held at Attica Correctional Facility, to which plaintiff had been transferred.[1]

After a ten-day adjournment to give plaintiff a chance to review certain material that he had requested, the hearing was concluded on August 2, 2006. Schoellkopf found plaintiff guilty of most of the charges against him, and imposed a penalty of twelve years' confinement to the Special Housing Unit ("SHU") and a correponding loss of good time and privileges. In support of his decision to impose such a stiff penalty, Schoellkopf stated that plaintiff's act of grabbing, punching, and threatening to kill the victim "constitutes one of the worst forms of misbehavior in a facility ... ." Dkt. #10 at 167.

Plaintiff filed an administrative appeal from Schoellkopf's decision, which was affirmed by SHU Director Donald Selsky. Plaintiff also filed an Article 78 petition in state court challenging the results of the disciplinary proceedings. The petition was dismissed by the Appellate Division, Fourth Department, on March 14, 2008. *Clyde v. Fischer*, 49 A.D.3d 1310.[2]

---

[1]Other than plaintiff, all of the witnesses testified by speakerphone.

[2]In addition, on February 23, 2007, plaintiff was convicted in state court of assault and other charges stemming from the July 2006 incident. He was sentenced to a term of imprisonment of twenty-five years to life, consecutive to the term that he was already serving. Dkt. #10 at 293. On April 30, 2010, by a 3-1 majority, a panel of the Appellate Division, Fourth Department, reversed plaintiff's conviction and ordered a new trial, on the ground that the trial

(continued...)

In his § 1983 action, plaintiff asserts three claims. The first of these alleges that the officer who was assigned to act as plaintiff's assistant during the disciplinary proceedings, defendant Correction Officer Maldonado, failed to assist him at all. Plaintiff's second claim alleges that defendant Schoellkopf imposed an excessive penalty on plaintiff, and that he failed to ensure that plaintiff was provided with adequate assistance. Plaintiff's third claim is asserted against defendant Selsky, based on Selsky's affirmance of Schoellkopf's determination. Plaintiff states in the complaint that he "is not seeking and will never seek to have his good time restored," but that he is only seeking monetary damages in this action. Dkt. #1 ¶¶ 43-46.

## DISCUSSION

**I. Res Judicata, Collateral Estoppel, and *Rooker-Feldman***

Defendants contend that plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. "Res judicata, also known as claim preclusion, requires that a final judgment on the merits of an action be given preclusive effect, barring the parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002).

Courts in this circuit have generally held, however, that because money damages are not available in Article 78 proceedings, an unsuccessful Article 78 petitioner is not barred from bringing

---

²(...continued)
court erred in failing to articulate a reasonable basis on the record for its decision to restrain plaintiff in shackles during his trial. *People v. Clyde*, ___ A.D.3d ___, 2010 WL 1730778, at *1.

a subsequent claim for damages under § 1983. *See*, *e.g.*, *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004); *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986); *Farid v. Bouey*, 554 F.Supp.2d 301, 316 (N.D.N.Y. 2008); *Watkins v. Annucci*, No. 02 CIV. 4475, 2006 WL 722005, at *4 (S.D.N.Y. Mar. 22, 2006). *Cf. Johns v. Rampe*, 333 Fed.Appx. 644, 646 (2d Cir. 2009) ("because Johns does not seek damages[ in his federal civil rights action], the Article 78 proceedings could have provided all the relief that he seeks. Thus, Johns's constitutional claims are barred by claim preclusion"). Res judicata, then, does not act as a bar to plaintiff's claims here.

I agree with defendants, however, that plaintiff's claims are subject to dismissal on the ground of collateral estoppel. "'Collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a 'full and fair opportunity to litigate ... in [a] prior proceeding' and where 'the decision of the issue was necessary to support a valid and final judgment on the merits' in the first action." *Irish Lesbian and Gay Org. v. Giuliani* 143 F.3d 638, 644 (2d Cir. 1998) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992)).

In the case at bar, plaintiff contends that the doctrine does not apply because "[t]he issues raised in Plaintiff's Article 78 petition are not the same issues raised in this action." Plaintiff's Mem. of Law (Dkt. #14) at 5. A review of plaintiff's Article 78 petition, however, shows that the claims that he advances in this action were expressly raised in his Article 78 proceeding. *See* Def. Ex. A (Dkt. #10).

Plaintiff alleged in his Article 78 petition that he "received no assistance from M. Maldonado what so ever ... ." *Id.* at 8, ¶ 16. He also alleged that Schoellkopf failed to take steps to ensure that

plaintiff received adequate assistance, *id.* ¶ 17, and that plaintiff "was not provided with relevant documentary evidence to enable him to prepare a defense." *Id.* at 11, ¶ 34. In a brief prepared on plaintiff's behalf by the Wyoming County-Attica Legal Aid Bureau, it was also alleged that plaintiff's sentence was harsh and excessive. *See* Dkt. #10 at 264. Because those allegations encompass plaintiff's claims in this case, plaintiff's claims are barred by the doctrine of collateral estoppel. *See, e.g.*, *Giakoumelos v. Coughlin*, 88 F.3d 56, 60 (2d Cir. 1996); *Graham v. Mahmood*, No. 05 Civ. 10071, 2008 WL 1849167, at *10 (S.D.N.Y. Apr. 22, 2008); *Rossi v. Goord*, No. 00-CV-1521, 2006 WL 2811505, at *12 (N.D.N.Y. Sept. 28, 2006).

For similar reasons, plaintiff's claims are barred by the judicially-created *Rooker-Feldman* doctrine, pursuant to which "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). "[I]nextricably intertwined means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation will be barred under the *Rooker-Feldman* doctrine if it would be barred under principles of preclusion." *Id.* (quoting *Phifer v. City of New York*, 289 F.3d 49, 55-56 (2d Cir. 2002) (internal quotations omitted).

Here, all of the requirements for the application of the *Rooker-Feldman* doctrine have been met. Plaintiff lost at the state court level, his claimed injuries flow from the state court's dismissal of his petition, his § 1983 claims in the present action effectively seek review of the state court decision, and the state court judgment was rendered prior to the commencement of the instant suit. Plaintiff's claims are therefore subject to dismissal on this ground as well. *See, e.g.*, *Ford v. Krusen*,

No. 9:06-CV-0890, 2009 WL 959534, at *9 (N.D.N.Y. Apr. 6, 2009); *Cole v. Fischer,* No. 07 Civ. 11096, 2009 WL 130186, at *4 (S.D.N.Y. Jan. 15, 2009).³

**II. Claim against Maldonado**

Plaintiff alleges that prior to his hearing, Officer Maldonado came to plaintiff's cell, and that plaintiff gave him "a list of the things he needed assistance with." Dkt. #1 ¶ 14. He further alleges that although Maldonado promised to return at a later time, in fact Maldonado never had any further contact with plaintiff, nor was anyone else assigned to act as plaintiff's assistant.

Although a prisoner does have a right to assistance in preparing for a prison disciplinary hearing, "the scope of DOCS's obligation in this regard is significantly limited, and ... an inmate's right to assistance in connection with a disciplinary hearing–which arises under the Due Process Clause of the Fourteenth Amendment ... falls far short of the right to counsel that the Sixth Amendment guarantees to criminal defendants." *Loving v. Selsky*, 2009 WL 87452, *2 (W.D.N.Y. 2009). In addition, "any violations of this qualified right are reviewed for 'harmless error.'" *Pilgrim*

---

³The Appellate Division's decision vacating plaintiff's criminal conviction relating to the alleged assault, *see* n. 1 *supra*, is of no moment to plaintiff's claims in the case at bar. The issues in this case concern whether plaintiff's constitutional rights were violated in connection with the DOCS disciplinary proceedings. The Appellate Division's decision in plaintiff's criminal case turned on the state trial court's decision to have plaintiff shackled at his criminal trial. The Appellate Division's decision that the trial court erred in that regard has no bearing on the issues before me. *Cf. Shapard v. Attea*, No. 08-CV-6146, 2009 WL 4042956, at *8 (W.D.N.Y. Nov. 19, 2009) (plaintiff's guilty plea in state court, in which he admitted assaulting DOCS officer, did not bar his § 1983 claim alleging that his due process rights were violated during DOCS disciplinary proceedings, since plaintiff's guilt on the criminal charges was distinct from whether his due process rights were violated).

*v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897, 898 (2d Cir.1988), and *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)).

In the case at bar, plaintiff's claim against Maldonado fails on the ground that, even *assuming* arguendo that plaintiff was not provided with adequate assistance by Maldonado, there is no basis in the record upon which a factfinder could conclude that plaintiff was prejudiced as a result. The record shows that Schoellkopf took steps to provide plaintiff with the evidence that he had requested, and that Schoellkopf granted plaintiff an adjournment to review that evidence, and there is no indication that the result of plaintiff's hearing would have been different had Maldonado provided plaintiff with the requested materials, or otherwise assisted him, in advance of the hearing. *See Chavis v. vonHagn*, No. 02-CV-0119, 2009 WL 236060, at *53 (W.D.N.Y. Jan. 30, 2009) (plaintiff's claims that he was denied an employee assistant to prepare for his disciplinary hearings failed, since the record established that "plaintiff was indeed able to present evidence (and often did), both oral and documentary, in his own defense") (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

### III. Claim against Schoellkopf

Plaintiff's claim against Schoellkopf must also be dismissed on the merits. Plaintiff's allegations that Schoellkopf was biased, that he impaired plaintiff's ability to present a defense to the charges against him, and that he imposed an excessive penalty are conclusory and not supported by the record.

As stated, the record shows that, contrary to plaintiff's assertions, Schoellkopf attempted to accommodate plaintiff's various requests for evidence, and that he gave plaintiff time to review the

evidence and prepare a defense. That some of Schoellkopf's rulings may not have been to plaintiff's liking is not enough to show bias on Schoellkopf's part. *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment"); *Wright v. Conway*, 584 F.Supp.2d 604, 609 (W.D.N.Y. 2008) (prisoner's "own subjective belief that [hearing officer] was biased ... is not enough to create a genuine issue of fact").

To the extent that the complaint can be construed as challenging the sufficiency of the evidence to support Schoellkopf's determination, such a claim is meritless as well. To withstand constitutional scrutiny, "prison discipline decisions ... must be 'supported by some evidence in the record.'" *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). The relevant question in reviewing such decisions is "whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. *Id.* (citing *Hill*, 472 U.S. at 455-56). Having reviewed the transcript and record of plaintiff's disciplinary hearings, I conclude that the evidence more than meets that standard here.

As to the alleged excessiveness of the penalty imposed, plaintiff's claim appears to be barred under by the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). That rule precludes a § 1983 action based on alleged constitutional violations in connection with a prisoner's disciplinary proceedings, where the sanction imposed in those proceedings could affect the overall length of the inmate's sentence, unless the inmate has succeeded in obtaining a favorable result in state court (or through federal habeas relief) in challenging the administrative findings. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004)

("where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence").

In the case at bar, plaintiff expressly disavows any present or future intent to have his good time credits restored, but he also alleges that Schoellkopf "abused his discretion by imposing such an excessive penalty of twelve years SHU and twelve years loss of good time." Complaint ¶ 33. His other allegations concerning hearing officer bias and due process violations, if accepted, would also clearly call into question the validity of the underlying determination of guilt on the administrative charges against him, which has never been overturned. Plaintiff cannot avoid *Heck*'s favorable-termination requirement merely by insisting that he only seeks damages in this action. *See Heck*, 512 U.S. at 487 (claim for damages for allegedly unconstitutional actions whose unlawfulness would render a conviction or sentence invalid is not cognizable under § 1983, unless that conviction or sentence has already been invalidated); *see also Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence").

The Second Circuit has held that "a prisoner can, without demonstrating that the challenged disciplinary proceedings or resulting punishments have been invalidated, proceed separately with a § 1983 action aimed at the sanctions or procedures that affected the conditions of his confinement ... if he agrees to abandon forever any and all claims he has with respect to the sanctions that affected the length of his imprisonment." *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006). In the case

at bar, plaintiff does not appear to challenge the conditions of his confinement, so much as the length of that confinement. Even assuming that plaintiff's claim that his SHU sentence was excessive could be construed as a conditions-of-confinement claim, however, plaintiff would not be entitled to relief absent a showing that some constitutional infirmity led to that confinement. *See*, *e.g.*, *Pacheco v. Drown*, No. 9:06-CV-0020, 2010 WL 144400, at *17 (N.D.N.Y. Jan. 11, 2010). He has not done so.

In addition, plaintiff's contention that the penalty imposed by Schoellkopf was unconstitutionally excessive is meritless. As noted by Schoellkopf, the assault here on a female DOCS staff member was "extremely violent," Dkt. #10 at 167, and given plaintiff's disciplinary and criminal record, the penalty alone did not give rise to a constitutional violation.

**IV. Claim against Selsky**

Plaintiff's claim against Selsky is premised upon Selsky's affirmance of Schoellkopf's determination. *See* Complaint ¶ 39. Since plaintiff has failed to show that his rights were violated during the disciplinary proceedings conducted by Schoellkopf, however, there is no basis for his claim against Selsky. *See Eleby v. Selsky*, 682 F.Supp.2d 289, 293 (W.D.N.Y. 2010); *Black v. Selsky*, 15 F.Supp.2d 311, 318 (W.D.N.Y. 1998).

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #7) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
UNITED STATES DISTRICT JUDGE

Dated: Rochester, New York
       June 1, 2010.